314 S.E.2d 854

**STATE of West Virginia**

v.

**Kermit Lee McDONALD Jr.**

No. 15874.

Supreme Court of Appeals of West Virginia.

March 21, 1984.

Chauncey H. Browning, Jr., Atty. Gen., and Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

Thomas L. Butcher, Public Legal Services, Charleston, for appellant.

PER CURIAM.

Kermit Lee McDonald, Jr. appeals a judgment of the Circuit Court of Grant County, which revoked his juvenile probation and sentenced him to six months to two years in a forestry camp. We conclude that under these circumstances probation was arbitrarily revoked, and reverse the circuit court.

On November 7, 1980 the appellant was adjudicated a delinquent child by the Circuit Court of Grant County. Based on the recommendation of John A. Hevener, Juvenile Probation Officer, appellant was placed on two to five years' supervised probation. The conditions of probation included a requirement that the appellant "not associate with any persons presently on probation or who have a previous criminal record." On November 20, 1980 additional probation terms and conditions were put into effect, including a curfew of 8:00 p.m. Sunday through Thursday, and 11:00 p.m. on Friday and Saturday.

In November 1981 the appellant violated his probation by associating with Charles "Bucky" Harman, another juvenile on probation. In his March 25, 1982 report Hevener stated that he had given appellant permission to associate with Harman so long as it was in one of their homes. On this occasion, however, the boys were not at home when they were found together. Hevener's report indicated that the appellant was probably a good influence on Harman, and stated that while on probation, the appellant had come a long way toward improving his attitude and personality.

The appellant was continued on probation after this incident, but on April 29, 1982 the terms and conditions of his probation were modified slightly. These modifications included an agreement by appellant to "not associate with anyone who has been on probation, is now on probation, whose reputation is questionable, or those whom my parents do not approve of." In addition, the curfew was extended by one hour, to 9:00 p.m. Sunday through Thursday, and 12:00 p.m. on Friday and Saturday.

On July 16, 1982 the Grant County prosecutor petitioned to modify the appellant's disposition order on the grounds that he had violated his probation by staying out past midnight with Michael Shane Rexrode, another probationer. Appellant had been a passenger in a car driven by Rexrode, who left the scene after being involved in an accident. An allegation that the appellant had also committed a crime was struck

after the State admitted that the appellant had not violated any criminal law.

On October 21, 1982 the appellant was found guilty of violating two probation conditions by violating his curfew and associating with persons on probation or parole. On November 1, 1982 the appellant underwent psychological evaluation by Thomas C. Stein, Ed.D., at the Potomac Highlands Mental Health Guild in Moorefield, to determine his suitability for probation.

In his November 3, 1982 report Dr. Stein found that the appellant was of above-average intelligence, but had problems with immaturity, impulsivity, and inadequate self-discipline. He recommended that probation be continued, extended, and stringently adhered to, suggesting that stronger requirements be imposed upon appellant, such as: spending some weekends in jail; completing his GED with an aim towards college; and, performing some public service activities, especially with law enforcement officials. Dr. Stein concluded:

"I do not feel that a fulltime incarceration in either the county jail or any state detention center would be in Kermit's best interests. My feelings here are based, primarily, on the fact that he is a very impressionable young man, and as such, if he were exposed to a criminal code of ethics or philosophy, he would most likely adopt that code. He currently does not adhere to such a code, but sees all his antisocial acts as simply 'getting kicks'."

The appellant presented this psychological report at the dispositional hearing on November 4, 1982. The court also heard testimony from Hevener, appellant's vocational teacher, the appellant and his parents. Hevener testified that he was particularly pleased with Dr. Stein's suggestion that appellant perform some public service activities for the county, if he were continued on probation. He was willing to work with the appellant further, under guidelines set up with Dr. Stein's recommendations in mind. Hevener stated that he would lean more towards continuing the appellant on probation, rather than sending him to forestry camp or some other secure facility.

According to Hevener, the appellant had abided by most of the probation conditions, was ready to take his GED exam, and regularly attended mechanics classes at the vocational school. The appellant's instructor at the school testified that appellant was doing decently in school, and would probably pass the course with a "C" average in June of 1983.

The appellant's parents testified that his behavior and relationship with them had greatly improved over the last year or so, and that he had "done a lot of growing up." They pointed to his decision to attend vocational school, his interests in mechanics and welding, his volunteer work with a handicapped Girl Scout troop in the summer, and his breaking off relations with former friends who were troublemakers. His parents seemed to see appellant's goals to straighten out his life, complete his vocational course, and get a decent job, as something toward which they were all working. As his father put it: "We feel that we have almost made it and we would like to make a good citizen of him." They did not believe that incarceration would help the appellant, and said that they were willing to continue supervising him on probation.

The appellant testified that he liked vocational school, and wanted to continue there and complete his GED. He said that he no longer had any desire to go out with his old friends or get into trouble, he was more interested in things at home now, and had made new friends at school. Appellant felt that he had improved, and thought that he could make it on probation, perhaps with a professional to talk to such as Dr. Stein.

Appellant said that he would try to follow any rules and regulations prescribed by the court, and would be willing to work with the Sheriff's Department. He offered to report to the court every month or so to keep the court informed of his progress while on probation.

Appellant's counsel asked that appellant be reinstated on probation, suggesting that appellant spend time exposed to people in

jail or facing incarceration, that he get counseling at Potomac Highlands, and that he work on his welding at school with the objective of getting his certificate and a job. Other options considered by the court were jail, a group home, Anthony Center and Davis Center, a forestry camp. Some of these options were limited by the appellant's age, since he had turned eighteen on November 1, 1982.

The court rejected probation as ineffective and jail as illegal, felt public service was unworkable, and noted that Anthony Center was unavailable since appellant had no criminal conviction. Although group homes in Pennsylvania and Maryland were discussed, the court said, "I think Davis is better than any group home that I am acquainted with." At the conclusion of the hearing the court remanded the appellant to the custody of the Department of Corrections for assignment to a forestry camp for a period of six months to two years. A stay of execution was granted to allow an appeal.

On January 10, 1983 the appellant moved the court to release him from juvenile probation to permit his enlistment in the United States Navy, as a less restrictive alternative to confinement. He presented documents showing that he had passed his GED, and had completed the Navy's AS-VAB exam with a score of 70, twice the national average of 35. The appellant stated that: he had in all respects qualified for enlistment; he could be inducted within ten to thirty days of his hearing; and, he would enlist for a minimum of four years. The court denied the appellant's motion, and appointed counsel to represent him on appeal. The appellant remains on probation pending the outcome of this appeal.

The appellant contends that the order of incarceration is in error because:

"Where uncontradicted psychological evidence states incarceration would destroy prospects for rehabilitation, the Court abuses its discretion to command the jailing of a juvenile for non-criminal violations of probation."

He also maintains that the court had insufficient reason to revoke his probation, and

failed to give precedence to the least restrictive dispositional alternative under the facts of this case.

*W. Va. Code*, 49–5–14 [1982] sets forth the procedure and standard of proof for modification of juvenile dispositional orders. Subsection (a) provides, in part:

"If the motion or request for review of disposition is based upon an alleged violation of a court order, the court may modify the dispositional order to a more restrictive alternative if it finds clear and convincing proof of substantial violation. In the absence of such proof, the court may decline to modify the dispositional order or may modify the order to one of the less restrictive alternatives set forth in section thirteen [§ 49–5–13] of this article."

In syllabus point 2 of *State ex rel. J.R. v. MacQueen*, 163 W.Va. 620, 259 S.E.2d 420 (1979), we held:

"A court which, as a further disposition under *W. Va. Code*, 1931, 49–5–13(b)(6), as amended, places a juvenile on parole may, as a modification of the dispositional order, revoke such parole under *W. Va. Code*, 1931, 49–5–14, as amended, and such revocation may be accomplished upon a finding of clear and convincing proof of a substantial violation."

*State ex rel. J.R. v. MacQueen, supra,* also held that a juvenile subjected to parole revocation must be afforded all of the constitutional protections afforded an adult in similar proceedings, and noted that the standard of proof in a proceeding under *W. Va. Code*, 49–5–14 [1982] is higher than that used in adult revocation proceedings. If a substantial violation by the juvenile of the conditions of parole is found by clear and convincing proof, parole may be revoked so long as the minimum requirements of due process are afforded. *Id.,* 163 W.Va. at 623, 259 S.E.2d at 423. In *State ex rel. E.K.C. v. Daugherty*, 171 W.Va. 298, 298 S.E.2d 834 (1982), we extended the due process guarantees of *State ex rel. J.R. v. MacQueen, supra,* to juvenile probation revocation proceedings, finding no essential difference between the liberty interests of parolees and probationers.

■ Even where a substantial probation violation is found, however, neither *W.Va. Code,* 49–5–14 [1982] nor the cases decided thereunder *require* that the juvenile's probation be revoked. Instead, the court may impose more restrictive probation terms as a penalty, *W.Va.Code,* 49–5–13 [1982], such as requiring the juvenile to participate in a public service project. *W.Va.Code,* 49–5–13b [1982].

■ The cardinal rule in juvenile dispositional proceedings is found in syllabus point 1 of *State ex rel. R.S. v. Trent,* 169 W.Va. 493, 289 S.E.2d 166 (1982):

"W.Va.Code § 45–5–13(b) (1980 Replacement Vol.) requires the juvenile court at the dispositional stage of delinquency proceedings to 'give precedence to the least restrictive' of the enumerated dispositional alternatives 'consistent with the best interests and welfare of the public and the child.'"

Syl. pt. 4, *State ex rel. H.K. v. Taylor,* 169 W.Va. 639, 289 S.E.2d 673 (1982); *see also* syl. pt. 2, *State ex rel. C.A.H. v. Strickler,* 162 W.Va. 535, 251 S.E.2d 222 (1979).

In 1982, the Legislature made it clear that this principle is equally applicable to modification proceedings under *W.Va. Code,* 49–5–14, when it amended the statute to provide, in subsection (b):

"In a hearing for modification of a dispositional order, or in any other dispositional hearing, the court shall give precedence to the least restrictive alternative consistent with the best interests and welfare of the public and the child..."

■ We have long recognized that the purpose of our juvenile law is to promote the rehabilitation of troubled children, rather than to punish them. *State ex rel. R.S. v. Trent, supra; State ex rel. D.D.H. v. Dostert,* 165 W.Va. 448, 269 S.E.2d 401 (1980); *State ex rel. S.J.C. v. Fox,* 165 W.Va. 314, 268 S.E.2d 56 (1980); *State ex rel. Harris v. Calendine,* 160 W.Va. 172, 233 S.E.2d 318 (1977). To this end, we have held:

"Before ordering the incarceration of a child adjudged delinquent, the juvenile court is required to set forth upon the record the facts which lead to the conclusion that no less restrictive alternative is appropriate. The record must affirmatively show that the child's behavioral problem is not the result of social conditions beyond the child's control, but rather of an intentional failure on the part of the child to conform his actions to the law, or that the child will be dangerous if any other disposition is used, or that the child will not cooperate with any rehabilitative program absent physical restraint."

Syl. pt. 2, *State ex rel. R.S. v. Trent, supra; see also State v. M.E.,* 170 W.Va. 367, 294 S.E.2d 171 (1982); *State ex rel. B.S. v. Hill,* 170 W.Va. 323, 294 S.E.2d 126 (1982); *State ex rel. D.D.H. v. Dostert, supra.*

In the case before us, the order of incarceration contained no specific findings of fact, nor were any designated as such on the record. However, we may glean from the transcript the following reasons for the court's ruling: the appellant had twice violated his probation agreement by associating with other probationers; he was not performing near his potential at vocational school, in that the court felt he should be earning "A's"; and, there were no definite job prospects in the area for someone with his vocational training. The court discounted appellant's more recent progress as merely "good behavior" because of pending probation revocation proceedings, and decided that the appellant would benefit more from group therapy with his peers at Davis Center, than from individual counseling in his community.

■ The record does not support the trial court's conclusion that nothing short of incarceration would benefit the appellant. The probation violations which precipitated this proceeding were hardly substantial, involved no criminal conduct on appellant's part, and seem unlikely to recur given his present attitudes. We consider the appellant's association with Rexrode to be an insufficient reason to revoke his probation, particularly since such behavior had already been condoned by his probation officer under other circumstances. As to the curfew violation, the record seems to indi-

cate that but for the accident, the appellant could have been home on time.

In contrast, the appellant had complied with the other terms of his probation agreement and had made significant advances in his education and vocational training, largely through his own initiative. He was even prepared to enlist in the Navy, had the court been willing to permit him to do so, and we find nothing objectionable about that alternative. The appellant's parents, probation officer and psychologist were in agreement that incarceration would be of little benefit to the appellant, and that his rehabilitation could be better accomplished at home. Finally, the appellant indicated his willingness to comply with any conditions the court may prescribe, including public service work and counseling.

■ The trial court erred in refusing to consider the appellant's progress during the interval between the probation violation and the dispositional hearing. We held in syllabus point 3 of *State ex rel. S.J.C. v. Fox, supra:*

"In considering the least restrictive alternative for sentencing a juvenile, a juvenile court must consider the reasonable prospects for rehabilitation of the child as they appear at the time of the dispositional hearing, with due weight given to any improvement in the child's behavior between the time the offense was committed and the time sentence is passed."

*See also State ex rel. D.D.H. v. Dostert, supra.*

■ We find nothing in the record to show that the appellant has intentionally failed to conform his actions to law, that he will be dangerous if not incarcerated, or that he will not cooperate with any rehabilitative program absent physical restraint. On the contrary, if there were ever a case in which we could say that a juvenile's rehabilitation plan was working, this would be the one. Although the lower court has the discretion to discipline the appellant, we believe that any punishment should be more in proportion to the offense. Clearly, there were less restrictive alternatives than

committing the appellant to a secure, prison-like facility such as Davis Center.

We therefore hold that under these circumstances, the circuit court's decision to revoke the appellant's probation and incarcerate him was arbitrary, constituted an abuse of discretion, was not supported by the evidence, and must be reversed. *Cf. State ex rel. D.D.H. v. Dostert, supra,* 165 W.Va. at 471, 269 S.E.2d at 416.

Accordingly, the judgment of the Circuit Court of Grant County is reversed and the case is remanded to the circuit court with directions to reconsider its disposition of the appellant in light of the principles stated herein.

Justice Neely concurs in the result in this case exclusively on the grounds that it was an abuse of discretion not to permit appellant to enlist in the Navy. He would remand exclusively for that purpose.

Reversed and remanded.