382 S.E.2d 527

**FACILITIES REVIEW PANEL, et al.**

v.

**Stephen F. GREINER.**

**Stephen F. GREINER**

v.

**WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES.**

Nos. 18997, 19010.

Supreme Court of Appeals of West Virginia.

June 8, 1989.

Rehearing Denied July 20, 1989.

Mary M. Downey, Facilities Review Panel, Charleston, for Facilities Review Panel.

Jeffrey B. Reed, Wood County Jud. Annex, Parkersburg, for Stephen F. Greiner Sheriff and Grimm, Guinn and Shaver Co. Com'rs of Wood Co.

Taunja Willis–Miller, Com'r, Dept. of Human Services, Janet Frye Steele, Asst. Atty. Gen., Dept. of Human Services, Donald L. Hall, Sr. Asst. Atty. Gen., Dept. of Human Services, for WV Dept. of Human Services.

NEELY, Justice:

The Sheriff of Wood County has been incarcerating youths between the ages of eighteen and twenty years, who remain under juvenile jurisdiction, in a "special juvenile unit" that consists of the circuit judge's holding room. The Facilities Review Panel filed a petition alleging such incarceration violates state statutes pertaining to juveniles and request a writ of mandamus ordering the sheriff and county commissioners to provide adequate facilities in accordance with *W.Va.Code*, 49–5–16a [1978]. The Sheriff, in turn, answers that the Department of Human Services is

required by statute to provide proper juvenile facilities and requests a rule to show cause why Human Services should not be compelled by a writ of mandamus to provide holding facilities.

The "special juvenile unit" is a 7 foot by 11 foot holding room with a toilet and sink, cots, a table built into the wall, one chair and a television. Although the Facilities Review Panel alleges two boys sometimes share the room, the last boy detained was E.C.G., born 11 February 1970. E.C.G. was adjudicated delinquent in 1986 for burglary and placed on probation until age twenty. His probation terms required him, *inter alia*, to report weekly to his probation officer and to attend school. E.C.G. has a positive work history since that time, being employed full time at decent jobs with favorable reports from his employers. However, he has not attended school regularly, a violation that his probation officer suggests is due to his being several years older than his classmates.

Beginning in the latter half of November, 1988, E.C.G. also failed to report to his probation officer, who then filed a motion to modify E.C.G.'s probation. On 21 December 1988, E.C.G. was detained in the "special juvenile unit" described above, where he has remained with the exception of a three week stay at the diagnostic center of the Industrial Home for Youth in Salem.

E.C.G. was locked inside the 7 foot by 11 foot room by himself for several months except at mealtimes, when he was taken across the street to the Wood County Correctional Center. He was not offered exercise, access to education, nor any form of counseling. When he was first detained, he was put in leg shackles 24 hours a day even though a deputy was stationed outside his locked door. Starting in mid-February, he was allowed to sleep without the leg shackles.

The Facilities Review Panel claims that the incarceration of children who are not charged with a violent felony nor awaiting transportation to a correctional facility for more than 96 hours violates *W.Va.Code,* 49–5–16 [1982], and that the conditions of E.C.G.'s incarceration in the holding room violate the provisions of *W.Va.Code,* 49–5–16a [1978] and Article III §§ 5 and 10 of the West Virginia *Constitution.* The Sheriff responds that it is not his responsibility to provide holding facilities for juveniles but that of the Department of Human Services, citing *W.Va.Code,* 49–2–16 [1988].

I.

This case, if not unique, is at least rare. E.C.G. is now over eighteen years old, which means that he is, in fact, an "adult." If his probation were being revoked because he had committed a new crime, he could be housed as an adult in the county jail on a complaint charging the underlying crime. However, his probation is being revoked because of a technical violation of his juvenile probation; thus, any detention must be in a facility appropriate for juveniles. So why not put him in a suitable juvenile section of the county jail? The reason given by the Sheriff is that E.C.G. is now *over* eighteen years old, which means that other *juveniles* under eighteen years old in the juvenile section of the jail have a right not to be within E.C.G.'s sight or sound. The Sheriff wants Human Services to set up a special detention facility for children in this profile.

We cannot grant the Sheriff's petition for a rule to show cause against Human Services because the duty of the Department of Human Services (DHS) to provide care and housing for children under *W.Va.Code,* 49–2–16 [1988] does not extend to an extraordinary case like this. *W.Va. Code,* 49–2–16 [1988], in pertinent part, states:

> The state department is hereby authorized and empowered to provide care, support and protective services for children who are handicapped by dependency, neglect, single parent status, mental or physical disability, or who for other reasons are in need of public service. Such department is also hereby authorized and empowered in its discretion to accept children for care from their parent or parents, guardian, custodian or relatives and to accept the custody of chil-

dren committed to its care by courts exercising juvenile jurisdiction. The department of human services or any county of such department is also hereby authorized and empowered in its discretion to accept temporary custody of children for care from any law-enforcement officer in an emergency situation.

The department of human services shall provide care in special boarding homes for children needing detention pending disposition by a court having juvenile jurisdiction or temporary care following such court action.

Although the second paragraph creates a mandatory duty, the duty of DHS to provide juvenile housing in special boarding homes does not reasonably extend to providing secure detention for a person under juvenile jurisdiction who is now an adult. Resources are too limited to squander them providing secure detention to a probation violator who is charged with no new criminal offense.

## II.

E.C.G., although he is eighteen years old, is subject to the continuing juvenile jurisdiction of the court under *W.Va.Code*, 49–5–2 [1978], which states, in pertinent part:

As used in this article, a "child" shall include a person under the age of eighteen years or a person subject to the juvenile jurisdiction of the court pursuant to this section. If a child sixteen years of age or older commits an act which is committed by an adult would be a crime and for such act is adjudged delinquent, the jurisdiction of the court shall continue until the child becomes twenty years of age with the same power over the child that the court had prior to the child's becoming an adult, and the further power to sentence such person to not more than six months in jail if the

offender is over the age of eighteen years. This shall not preclude the exercise of criminal jurisdiction in case the offender, after becoming an adult, commits a violation of law. A child may be brought before the circuit court for proceedings under this article by the following means and no others.

We construed this statute together with other statutes pertaining to juvenile jurisdiction over children between the ages of eighteen and twenty in *State ex rel. M.L.N. v. Greiner*, 178 W.Va. 479, 360 S.E.2d 554 (1987), which case largely controls our decision here. In *M.L.N., supra,* we awarded a writ of mandamus to three eighteen-year-old males who were incarcerated in the "juvenile detention portion" of the Wood County Correctional Center. The threshold question in that case was whether delinquent eighteen year old youths who are subject to continuing juvenile court jurisdiction should be treated as juveniles or adults. We held in Syllabus Pt. 3 of *M.L.N., supra* that such youths come within the definition of "child" provided in *W.Va.Code*, 49–5–2 [1978], quoted above, and that they must be given the same commitment and rehabilitation rights as delinquent children under the age of eighteen. Because such youths are considered children rather than "adult" prisoners, the Sheriff is wrong when he asserts that they must be housed out of sight and sound of juveniles under age eighteen.[1]

Minimum standards for juvenile detention facilities are set forth in *W.Va. Code*, 49–5–16a [1978]. Because youths between the ages of eighteen and twenty who are subject to continuing juvenile jurisdiction under *W.Va.Code*, 49–5–2 [1978] are defined as children for purposes of article 49, *W.Va.Code*, any facility in which such youths are held must meet the minimum standards required by *W.Va.Code*, 49–5–16a [1978].

---

1. Juveniles generally must be segregated not according to age, but according to whether they are guilty merely of a "status" offense, i.e. an act not considered an adult crime, or whether they committed an act which is considered an adult crime. *W.Va.Code*, 49–5–16(a) [1982]. We held in *State ex rel. Harris v. Calendine*, 160 W.Va. 172, 233 S.E.2d 318 (1977) and *State ex rel. H.K.*

*v. Taylor*, 169 W.Va. 639, 289 S.E.2d 673 (1982), that juvenile status offenders cannot be incarcerated in a secure prison-like facility with juveniles adjudged delinquent because of criminal activity, but that such juveniles may be housed and educated together under certain circumstances in half-way houses and other modern, well-staffed facilities.

It is clear that the conditions of E.C.G.'s incarceration in the holding room, even if it is called a "special juvenile unit," violate many of the minimum standards set forth in *W.Va.Code,* 49–5–16a [1978]. We find it particularly egregious that E.C.G. was required to wear leg shackles, and that he was locked by himself in a room with no opportunity for physical exercise or access to educational materials. As we have emphasized repeatedly in the past, the purpose of juvenile proceedings is rehabilitation, not punishment, *State ex rel. R.S. v. Trent,* 169 W.Va. 493, 289 S.E.2d 166 (1982), and the court is required to "give precedence to the least restrictive alternative consistent with the best interests and welfare of the public and the child." *W.Va.Code,* 49–5–14 [1982]; Syl. pt. 1, *State v. McDonald,* 173 W.Va. 263, 314 S.E.2d 854 (1984).

If juveniles in the profile of E.C.G. must be incarcerated, they may be incarcerated only in a facility meeting the minimum standards of *W.Va.Code,* 49–5–16a [1978].[2] If the Sheriff insists that no such facility exists, then the juvenile may not be incarcerated.

Writ granted.

382 S.E.2d 531

Kermit HOLDREN

v.

**WORKERS' COMPENSATION COMMISSIONER and Cannelton Industries, Inc.**

No. 18615.

Supreme Court of Appeals of
West Virginia.

June 8, 1989.

Dissenting Opinion Aug. 2, 1989.

Thomas G. Truman, Meadows, Crews & Truman, Chesapeake, for Holdren.

---

**2.** As we pointed out previously, E.C.G. could have been incarcerated in such a facility with juveniles under eighteen. If Wood County lacks such a facility, such children may be sent to a conforming facility in another county. *W.Va. Code,* 49–5A–5 [1978] and *State ex rel. M.L.N. v.*

Jeff C. Woods, Jackson & Kelly, Charleston, for Cannelton Ind.

BROTHERTON, Chief Justice:

This proceeding involves an appeal by the claimant, Kermit Holdren, from the April 15, 1988, order of the Workers' Compensation Appeal Board, which affirmed the August 12, 1987, final order of the Workers' Compensation Commissioner rejecting the claimant's application for occupational noise-induced hearing loss benefits as untimely filed.

The claimant last worked for Cannelton Industries on July 29, 1982. He did not file his claim for hearing loss benefits until September 6, 1985, when an audiogram and report was completed by Dr. Carl Rosenberg. On December 3, 1985, the Commissioner rejected the claimant's application for benefits, stating that the application had not been filed within three years from and after the date he was last exposed to industrial noise or three years from and after the date he should reasonably have known that his hearing loss was due to industrial noise exposure. The Commissioner also noted that no affidavit had been filed showing good cause for the late filing pursuant to *Bailey v. State Workers' Compensation Commissioner,* 170 W.Va. 771, 296 S.E.2d 901 (1982).

The claimant protested that ruling and filed an affidavit, stating that he was unaware of both the three-year statute of limitations and that he could file an application for hearing loss benefits. He also stated in the affidavit that he was unaware of the fact that he suffered from a hearing loss consistent with prolonged exposure to industrial noise until he was informed by Dr. Rosenberg at the New River Breathing Center.

The claimant testified at a discovery hearing held on March 5, 1986. Contrary to his affidavit, the claimant testified that:

Q. Mr. Holdren, as I understand it, you first noticed problems with your hearing about ten years ago, back while you were still working?

A. Yeah.

Q. Did you, were you exposed to any noise while you were working at Cannelton?

A. Oh, yes.

Q. Did you suspect that the problem with your hearing was due to the noise of the machinery at work?

A. Yes. I figured it contributed to it a lot.

The claim was then submitted for a decision. On August 12, 1987, the Commissioner affirmed the rejection order. The claimant appealed.

By order dated April 15, 1988, the Workers' Compensation Appeal Board affirmed the Commissioner's final rejection order. Specifically, the Appeal Board found that it was apparent from the claimant's testimony that the claimant believed, as early as 1976 and as late as 1981, that his employment in the colliery industry and exposure to noise in his employment had contributed to his hearing loss. The Appeal Board then noted that:

The claimant seems to urge on appeal, despite the date on which he knew or should have known that he had an occupationally related hearing loss, that he has filed a timely application for benefits because he filed within three years from and after the date he was advised by a physician that he had a compensable hearing loss. Under the claimant's interpretation, a claimant could not file an untimely application for benefits. ... Given the fact that the claimant's application was not filed until September of 1985, the application simply was not timely filed within the meaning of W.Va. Code § 23–4–15.

This proceeding is the claimant's appeal from the Appeal Board's ruling.

On appeal, the parties ask this Court to determine what constitutes timely filing of an application for an occupational disease under W.Va.Code § 23–4–15 (1988).[1] For

*Greiner, supra,* note 13, 178 W.Va. at 485, 360 S.E.2d at 560.