STATE OF WEST VIRGINIA

**Michael Greene,
Petitioner Below, Petitioner**

vs.)  **No. 18-0072** (Mercer County 15-C-357-WS)

**Donnie Ames, Superintendent,
Mt. Olive Correctional Complex,
Respondent Below, Respondent**

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael Greene, by counsel Ryan J. Flanigan, appeals the Circuit Court of Mercer County's January 8, 2018, order denying his amended petition for a writ of habeas corpus.[1] Respondent Donnie Ames, Superintendent, by counsel Scott E. Johnson, filed a response and supplemental appendix.[2] Petitioner filed a reply pro se. On appeal, petitioner asserts that the circuit court erred in not finding that trial counsel failed to file an appeal, not reviewing his probation revocation hearing, not finding that the evidence was insufficient to support revocation of his probation, placing him on adult probation while he was under juvenile jurisdiction, and in finding that his completion of a core curriculum did not satisfy a term of his probation.

---

[1]On May 24, 2018, petitioner's counsel moved for leave for petitioner to file a pro se supplemental brief under Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure. This rule provides, in relevant part, that

> [i]f counsel is ethically compelled to disassociate from any assignments of error that the client wishes to raise on appeal, counsel must file a motion requesting leave for the client to file a pro se supplemental brief raising those assignments of error that the client wishes to raise but that counsel does not have a good faith belief are reasonable and warranted.

This Court granted that motion on May 29, 2018, and petitioner, pro se, filed a supplemental brief.

[2]Petitioner listed Ralph Terry, former Warden of Mt. Olive Correctional Complex, as respondent in this matter. Effective July 1, 2018, the positions formerly designated "wardens" are now designated "superintendents," *see* W.Va. Code § 15A-5-3, and the current superintendent is Donnie Ames. Accordingly, the appropriate party has been substituted per Rule 41(c) of the Rules of Appellate Procedure.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was arrested on January 9, 2010, in connection with the murder of Clayton Mitchum. Petitioner was charged as a juvenile in Mercer County Criminal Case No. 10-JD-03, and he remained incarcerated until May 3, 2010, when the charge was dismissed. On August 3, 2010, petitioner was arrested for carrying a concealed weapon (Mercer County Criminal Case No. 10-JD-61). Petitioner stipulated to the delinquency charge and was sentenced to the Salem Industrial Home ("Salem").

While petitioner was at Salem, in February of 2011, the murder charge was refiled (Mercer County Criminal Case No. 11-JD-11) along with three counts of delivery of a controlled substance (Mercer County Criminal Case No. 11-JD-118). Although petitioner completed his sentence for the concealed weapon charge in August of 2011, he remained at Salem due to the pending murder and drug charges.

In April of 2012, petitioner entered into a plea agreement with the State, which was approved by the circuit court. In that agreement, petitioner consented to an adjudication of delinquency on the three delivery of a controlled substance charges and placement in a facility to complete a youthful offender program. Petitioner further consented to the filing of an information, consented to transfer to adult jurisdiction, and entered a guilty plea to first-degree robbery as an accessory, stemming from Mr. Mitchum's murder. The agreement provided that his first-degree robbery sentence would be capped at twenty years, his sentence would be suspended and he would be placed on probation "consecutive to release from [j]uvenile custody," and there would be a deferred adjudication of guilt. Specifically, should petitioner "successful[ly] complet[e] . . . probation, or successful[ly] complet[e] . . . a two-year Associate[']s degree program or an equivalent trade-school certification," his guilty plea to robbery would be withdrawn and the case dismissed. Finally, the agreement provided that if either party failed to comply with the agreement's terms, the "plea, conviction and sentence shall be vacated and set aside[,] . . . and the parties will be returned to their original positions before the entry of the plea, and any charges dismissed or reduced, as a result of this plea bargain will be reinstated."

Petitioner and the State appeared for sentencing on May 24, 2013. The circuit court found that petitioner had successfully completed the youthful offender program (11-JD-118), and it deferred adjudication on the first-degree robbery charge and placed petitioner on five years of probation.

Four days after the sentencing hearing, on May 28, 2013, the State filed a petition to revoke petitioner's probation alleging that he was in possession of a concealed weapon, associated with felons, and broke curfew. At the probation revocation preliminary hearing, Bluefield Police Department Officer Ron Davis testified that shortly after midnight on May 28, 2013, he responded to a report of an altercation at a gas station. After locating the individuals involved in the altercation

2

on another street, Officer Davis learned that Anthony Webb, who had blood on his shirt, had been involved in the altercation. As Officer Davis was speaking with Mr. Webb, he "observed [petitioner] laid back in the driver's seat of a silver" car. Officer Davis approached petitioner from the passenger side of the car and observed a handgun "behind the driver[']s seat in the passenger left side" of the car. After directing petitioner to exit the car, Officer Davis found another handgun concealed "in the driver's compartment of the driver's side of the vehicle, where [petitioner] was seated." Although Officer Davis's investigation did not confirm that either gun was owned by petitioner, his "investigation led [him] to believe that [one of the guns] was in possession of [petitioner] due to his position in the vehicle." Officer Davis also identified other individuals present at the scene, many of whom Officer Davis arrested previously. The circuit court found probable cause to believe petitioner violated the terms and conditions of his probation, as alleged in the revocation petition, and set the matter for a final hearing.

Petitioner and the State appeared for an evidentiary hearing on June 24, 2013. Officer Davis again testified, and his testimony from the preliminary hearing was incorporated into the evidentiary hearing. Mr. Webb also testified. Mr. Webb testified that he was with petitioner earlier in the day, but they parted ways before eventually meeting back up with other individuals at the gas station from which the report of the altercation was made. Mr. Webb claimed that, while at the gas station, someone hit him "out of the blue," and he and the other individual began to fight. Unbeknownst to petitioner, Mr. Webb pulled out one of the guns from his car, which caused the individual with whom Mr. Webb was fighting to run. Mr. Webb put the gun back in the car and began to run after his assailant. Given the presence of guns in the car, Mr. Webb also directed petitioner to move the car away from the altercation, but he did not alert petitioner to the guns. According to Mr. Webb, Officer Davis appeared immediately after petitioner moved the car. Mr. Webb also testified that the car in which petitioner was found was rented to Mr. Webb's stepsister and that the guns found in the car belonged to Mr. Webb. Mr. Webb was adamant that petitioner was unaware of the guns in the car, but he admitted that certain known criminals were present at the gas station on the evening of the altercation.

At the dispositional hearing on July 8, 2013, the circuit court revoked petitioner's probation and imposed his twenty-year sentence pursuant to the terms of the plea agreement. In reaching this disposition, the circuit court expressed to petitioner that

> [t]ime and time and time again you have been given chance after chance after chance each time. Each time you failed to take advantage of it. You go back to that same lifestyle, that same street lifestyle that I have begged you to leave behind. How long were you out on probation and you're back? It's not that you were out pas[t] curfew. It's not that you were caught in a car with two weapons whether you knew that they were there or not. It's the fact that you're back with the same people, the same lifestyle, that I begged you to leave behind.
>
> . . .
>
> Like I said it's . . . the potential for violence that, you know the fact that you're out past curfew, you're caught in a vehicle with two guns, whether you knew they [were] there or not, the fact that you're even in that vehicle with people that were

involved in violent behavior that night. Mr. Webb said he was getting ready to shoot somebody. I mean, that was his testimony and these are the people you're hanging with.

Petitioner filed a pro se petition for a writ of habeas corpus on October 21, 2015. Following the appointment of counsel, petitioner filed an amended habeas petition on February 7, 2017. Petitioner raised several grounds in the amended petition, including, among others, failure to take an appeal, unfulfilled plea bargain, and sufficiency of the evidence. The parties appeared for an omnibus evidentiary hearing on March 24, 2017. On January 8, 2018, the circuit court denied petitioner habeas relief. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016).

On appeal, petitioner first asserts that the circuit court erred in not finding that trial counsel failed to appeal his probation revocation. Petitioner asserts that "probation revocation was an appealable issue" and should have been appealed because there was insufficient evidence to find that he violated his probation contract.

Although petitioner checked "failure of counsel to take an appeal" on a checklist of potential grounds for habeas relief appended to his amended habeas petition, his amended petition contained no arguments or facts in support of this ground, and petitioner acknowledges that "it was not specifically argued" in his amended petition. In ruling on this ground, the circuit court noted that petitioner "did not argue that his counsel refused to take an appeal in either his brief or at the [o]mnibus [e]videntiary [h]earing," and petitioner failed to "make any argument relating to a ground that could have been pursued on appeal." Nonetheless, the circuit court reviewed the record and determined that counsel filed an appeal related to whether petitioner was entitled to additional credit for time served. *See State v. Greene*, No. 15-0402, 2016 WL 3463468 (W. Va. June 21, 2016)(memorandum decision). Given that specific arguments related to counsel's failure to appeal petitioner's probation revocation were not made below and that counsel clearly did file an appeal on petitioner's behalf, we find no error in the circuit court's conclusion that petitioner "has failed to show that his counsel failed to take an appeal."

Next, petitioner claims that the circuit court erred in not reviewing his probation revocation hearing record. In support, petitioner cites to *State v. Ketchum*, where we held that "[a] probation revocation may be reviewed either by a direct appeal or by a writ of habeas corpus." 169 W. Va. 9, 298 S.E.2d 657, syl. pt. 1 (1981). Petitioner claims that "it does not appear that the [circuit court]

4

specifically reviewed the record from the probation revocation hearing" because the order denying petitioner habeas relief "lacks any specific facts reviewed regarding the hearing."

Although petitioner is correct in his recitation of our holding in *Ketchum*, nothing in that opinion requires a circuit court to undertake such a review on its own. Rather, a habeas petitioner bears "the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release." Syl. Pt. 1, in part, *State ex rel. Scott v. Boles*, 150 W. Va. 453, 147 S.E.2d 486 (1966); *State ex rel. Richey v. Hill*, 216 W. Va. 155, 163, 603 S.E.2d 177, 185 (2004) ("[A] petitioner in a post-conviction proceeding bears the burden of pleading and subsequently proving his claims by a preponderance of the evidence."). Accordingly, petitioner is entitled to no relief on this ground.

Petitioner further claims that the circuit court erred in denying him habeas relief where there was insufficient evidence to establish that he violated his probation contract. He argues that the circuit court ignored Mr. Webb's testimony regarding ownership and knowledge of the guns, and petitioner claims there was no evidence that the criminals present at the gas station were with petitioner. This specific lack of evidence was critical because, according to petitioner, the circuit court revoked his probation not because he was in the car with weapons or past curfew, but because he was with the same individuals the court had asked him to leave behind.

As set forth above, petitioner did not brief or argue issues regarding the sufficiency of the evidence in his amended petition or during the omnibus evidentiary hearing. Nevertheless, the circuit court "again reviewed the record and cannot find any evidence to support" an insufficiency of the evidence claim. In light of the testimony adduced during the probation revocation proceedings recounted above, we find no error in the circuit court's conclusion that petitioner is entitled to no relief on this ground.

Moreover, we find that petitioner's assertion that the circuit court revoked his probation solely due to the fact that he associated with felons to be taken out of context. Although the circuit court was clearly dismayed to learn that petitioner was in the presence of individuals it had cautioned petitioner against associating with, it concluded that petitioner was a "dangerous individual" and that the "potential for violence" existed since he was "out past curfew, . . . caught in a vehicle with two guns, whether [he] knew they [were] there or not, [and] . . . in that vehicle with people that were involved in violent behavior that night." In short, all three charges formed the basis for revoking probation and imposing petitioner's twenty-year sentence.

In petitioner's pro se supplemental brief, he raises a number of assignments of error that can be distilled into two general assignments of error. First, petitioner claims that the circuit court erred in placing him on adult probation when he was still under juvenile jurisdiction. Second, petitioner claims that the circuit court erred in concluding that his completion of a core curriculum did not satisfy the term of his plea agreement requiring "successful completion of a two-year Associate[']s degree program or an equivalent trade-school certification."

In support of petitioner's claim that the circuit court erred in placing him on adult probation, petitioner cites a number of statutes governing juvenile proceedings as well as *State ex rel. M.L.N. v. Greiner*, 178 W. Va. 479, 360 S.E.2d 554. In *Greiner*, we held that "[u]nder West Virginia Code

§§ 49-5-16(a) . . . and 49-5A-2[,] . . . the Legislature intended a prohibition against jailing youths between the ages of eighteen and twenty years, who remain under juvenile jurisdiction, within the sight or sound of adult prisoners." 178 W.Va. at 479, 360 S.E.2d at 554, syl. pt. 4, in part. Importantly, this holding applies to youths "who remain under juvenile jurisdiction." The plea agreement into which petitioner entered plainly provided that he would "waive transfer to adult jurisdiction" and enter a plea to first-degree robbery as an accessory.

Additionally, at petitioner's plea hearing, the circuit court explained that because petitioner committed the first-degree robbery while he was under the age of eighteen, petitioner had "the right to have this charge first filed as a juvenile petition." Petitioner indicated that he understood. Further, the court explained to petitioner that "if you waive your juvenile jurisdiction and you waive transfer to adult jurisdiction what that means is that this case can be filed against you as an adult and that you will face the consequences that an adult would face with regards to this charge. Do you understand that?" Again, petitioner stated that he understood. The circuit court also asked petitioner whether it was his "desire to waive juvenile jurisdiction, consent to a transfer to adult jurisdiction, and is it also your desire to waive your indictment and consent to the filing of the information?" Petitioner responded, "Yes, sir."

As the plea agreement into which petitioner entered also resolved pending juvenile matters, the circuit court also explained to petitioner that his placement on probation for the first-degree robbery charge

> would start to run after you're released from juvenile custody. From juvenile jurisdiction. Do you understand that? Either after you complete the Glen Mills Program or you complete the program at the Industrial Home. Do you understand that. . . . One of those, or you turn 21. Which one . . . which[ever] occurs first I guess.

Petitioner acknowledged his understanding of the process. Thus, after petitioner completed his juvenile sentence, he was properly placed on adult probation, and then properly sentenced to incarceration following the revocation of that probation.[3] Petitioner's citation to statutes regarding juvenile proceedings and *Greiner* are unavailing, as petitioner was no longer under juvenile jurisdiction with respect to the first-degree robbery charge.

Finally, petitioner claims that in completing a core curriculum, he completed a trade school certification equivalent, thereby satisfying the terms of his plea agreement and which should have resulted in the withdrawal of his plea and dismissal of his case. We begin by noting that petitioner offers no evidence or argument to support his assertion that completion of a core curriculum is equivalent to a two-year associate's degree or trade school certification. Moreover, it is undisputed that petitioner did not complete this coursework while on probation. At petitioner's plea hearing, the circuit court informed petitioner that

---

[3]The circuit court entered an order on May 30, 2013, stating that petitioner "graduated from the program at [the] West Virginia Industrial Home for Youth on May 23, 2013." The court further deferred sentencing petitioner for first-degree robbery and placed him "on supervision with random drug screens for five (5) years with the usual terms and conditions."

if you successfully complete your probation or if you . . . obtain an associate[']s degree or equivalent trade school certification *while you are on probation* then at the end of your probation you could come in and ask to withdraw your plea and the robbery would be dismissed. Do you understand that?

(Emphasis added.) Petitioner demonstrated an understanding of this requirement. Accordingly, we find no error in the circuit court's conclusion that petitioner did not satisfy the terms of his plea agreement.

For the foregoing reasons, we affirm the circuit court's January 8, 2018, order denying petitioner's amended petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** May 24, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

7