## No. C-1422

### The People of the State of Colorado, In the Interest of C.B. and Concerning M.B.

(585 P.2d 281)

Decided October 10, 1978. Opinion modified and as modified rehearing denied October 30, 1978.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, David K. Rees, Assistant, appellant section, for petitioner.

John A. Purvis, Acting State Public Defender, Paula K. Miller, Deputy, for respondent.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

In October, 1975, the juvenile respondent, C. B., was adjudicated a delinquent and placed on probation for a term not to exceed two years. Additionally he was given a suspended commitment to the Department of Institutions and ordered to pay restitution.

Subsequently the People filed a petition for modification or revocation of probation alleging that C. B. had conspired to commit[1] and had

---

[1] Section 18-2-201, C.R.S. 1973 (1977 Supp.).

committed[2] third-degree assault. At the hearing on this petition, the court employed a burden of proof standard requiring "convincing" evidence. It found that the juvenile had committed acts which, if done by an adult, would have constituted the above-stated crimes. The court sustained the revocation petition, fined C. B. $150, and continued the suspension of the prior order which had committed him to the Department of Institutions on condition that he attend school and obtain a summer job.

The court of appeals held that the trial court had erred in not requiring proof "beyond a reasonable doubt," rather than merely "convincing evidence" as the standard of proof to support its finding that C. B. had engaged in conduct which if done by an adult would have constituted a crime. *People in the Interest of C. B. and Concerning M. B.*, 40 Colo. App. 43, 572 P.2d 843 (1977). We agree.

Section 16-11-206(3), C.R.S. 1973, sets forth an *adult* probationer's procedural rights regarding the burden of proof at a revocation hearing:

"At the hearing, the prosecution has the burden of establishing by a preponderance of the evidence the violation of a condition of probation; *except that the commission of a criminal offense must be established beyond a reasonable doubt unless the probationer has been convicted thereof in a criminal proceeding.* The court may, when it appears that the alleged violation of conditions of probation consists of an offense with which the probationer is charged in a criminal proceeding then pending, continue the probation revocation hearing until the termination of the criminal proceeding." (Emphasis added.)

Thus in Colorado an adult charged with a probation violation which constitutes a criminal offense has the right to demand that the People's case be proved "beyond a reasonable doubt." The question here is whether this weightier standard of proof should apply in juvenile probation revocation proceedings when the alleged violation of probation arises from conduct which, if done by an adult, would constitute a crime. We hold that the same standard of proof which governs adult probation revocation applies to juvenile proceedings.

The General Assembly in section 16-11-206(3) expressed the policy of this state that before probation can be revoked for criminal acts, the factfinder must find beyond a reasonable doubt that the probationer actually committed the crime relied upon as a violation of probation. The legislature thus recognized the crucial role that this high standard of proof plays in the truth-finding process. As the United States Supreme Court has declared:

---

[2] Section 18-3-204, C.R.S. 1973 (1977 Supp.).

"The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence — that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'

\* \* \* \*

"Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." *In re Winship,* 397 U.S. 358, 363-64,90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368, 375 (1970).

■ From its inception the juvenile court system has permitted wide differences in the treatment of children and adults who have violated the law. The juvenile court system was created to ensure the care and guidance for the errant child that will ultimately "best serve his welfare and the interest of society." Section 19-1-102(1)(a), C.R.S 1973. These purposes of the juvenile justice system will not be served by affording juveniles lesser procedural protections than adults against the revocation of probation for allegedly criminal conduct. The same considerations that motivated the General Assembly to require a high degree of caution in findings of fact for the protection of adults apply as well to the child. *See In re Winship, supra.*

The stigma that attaches to a juvenile upon the finding that he has committed acts which would constitute a criminal offense if done by an adult is not always less than that imposed on an adult when he is convicted of a crime. The United States Supreme Court has recognized this problem:

"Further, we are told that one of the important benefits of the special juvenile court procedures is that they avoid classifying the juvenile as a 'criminal.' The juvenile offender is now classed as a 'delinquent.' . . . It is disconcerting, however, that this term has come to involve only slightly less stigma than the term 'criminal' applied to adults." *In re Application of Gault,* 387 U.S. 1, 23-4, 87 S.Ct. 1428, 1441-42, 18 L.Ed.2d 527, 544 (1967).

■ Upon revocation of probation, a juvenile and an adult face the same potential consequence: incarceration. *Cf.* sections 19-3-117(d)(II) and 19-3-113.1, C.R.S. 1973 (1977 Supp.) (juveniles) *with* section 16-11-206(5), C.R.S 1973 (adults). Both the juvenile probationer and the adult

probationer are subject to the punishment that originally could have been imposed. For a juvenile this punishment potentially involves no less a restraint of liberty than it does for an adult. The Supreme Court, in the *Gault* case, asserted:

"A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence — and of limited practical meaning — that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with whitewashed walls, regimented routine and institutional hours . . . .' Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and 'delinquents' confined with him for anything from waywardness to rape and homicide." 387 U.S. at 27, 87 S.Ct. at 1443, 18 L.Ed.2d at 546.

The fact that the purpose of the commitment of juvenile delinquent is rehabilitative and not punitive does not change the nature of the commitment.

"Regardless of the purposes for which the incarceration is imposed, the fact remains that it is incarceration. The rehabilitative goals of the system are admirable, but they do not change the drastic nature of the action taken. Incarceration of adults is also intended to produce rehabilitation." *Breed v. Jones,* 421 U.S. 519, 530, n. 12, 95 S.Ct. 1779, 1786, 44 L.Ed.2d 346, 356 (1975).

In many other aspects of the probation revocation proceeding the child probationer is afforded the same procedural protections as an adult probationer. Both child and adult must be given a written statement concerning the alleged violations of probation; both are entitled to notice and a hearing and to compulsory process for the attendance of witnesses. Section 19-3-117, C.R.S 1973 (juveniles); section 16-11-206, C.R.S. 1973 and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (adults).

■ We find no basis for depriving juveniles of the burden of proof protections afforded adults in probation revocation proceedings. Children and adults facing revocation of probation are in legally and practically indistinguishable positions. The integrity of the factfinding process is equally at stake whether the probationer is over or under eighteen years of age. Neither the flexibility nor the efficiency of the juvenile court system will be disrupted by requiring proof "beyond a reasonable doubt" of juvenile probation violations based upon alleged acts which would constitute crimes if done by adults. In our view minimal due process guarantees of fundamentally fair procedures require no less. *U. S. Const.,* Amendment XIV; *Colo. Const.,* Art. II, sec. 25.

Accordingly, the judgment of the court of appeals is affirmed.