The PEOPLE of the State of Colorado, In the Interest of, M.C., Minor Child, Petitioner,

and Concerning

V.C., Respondent.

No. 87SC379.

Supreme Court of Colorado, En Banc.

May 30, 1989.

David F. Vela, Colorado State Public Defender Victor E. Reyes, Deputy Colorado State Public Defender, Pueblo, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., Paul H. Chan, Asst. Atty. Gen., Denver, for respondent.

KIRSHBAUM, Justice.

Petitioner, M.C., seeks certiorari review of a judgment of the Court of Appeals affirming the trial court's denial of his motion to vacate illegal sentence.[1]  750 P.2d 69.  The Court of Appeals concluded that M.C.'s rights to equal protection of the law as guaranteed by article II, section 25, of the Colorado Constitution and the fourteenth amendment to the United States Constitution were not violated by the disposition ordered in this juvenile proceeding. We affirm, but for reasons differing from those articulated by the Court of Appeals.

## I

In August 1985, a petition in delinquency was filed against M.C. containing one count, which alleged that M.C. had commit-

---

1.  The motion was apparently filed pursuant to Crim.P. 35(c).

ted the felony offense of second degree burglary, in violation of section 18–4–203, 8B C.R.S. (1978 & 1985 Supp.). In January 1986, an amended petition in delinquency was filed against M.C. The amended petition contained a second count alleging commission of the second class petty offense of possession of not more than one ounce of marijuana, in violation of section 18–18–106(1), 8B C.R.S. (1985 Supp.). On March 27, 1986, M.C., then eighteen years old, entered a plea of guilty to the marijuana possession count. The second degree burglary allegations were then dismissed, and the trial court entered the order of disposition which underlies this proceeding.

The trial court's dispositional order contains several provisions. The trial court committed M.C. to the Department of Institutions for a period of two years, stayed execution of that sentence, and granted M.C. probation for an indefinite period not to exceed two years. The trial court also ordered M.C. to serve forty-five days at the Pueblo Youth Center, but suspended the sentence on the condition that in the event any term or condition of probation was violated, M.C. would "serve time in detention for each violation."[2]

M.C. was seventeen at the time he committed the acts underlying his adjudication as a delinquent. He was eighteen when the dispositional order was entered on March 27, 1986. At that time, an adult convicted of the offense of possession of not more than one ounce of marijuana was subject to a maximum penalty of a $100 fine. § 18–18–106(1), 8 C.R.S. (1985 Supp.). At the dispositional hearing, M.C. argued that he was subject to the sentencing provisions applicable to adults and that any sentence to the Department of Institutions would violate his constitutional rights to equal protection of the law. M.C. reasserted this position in a Crim.P. 35(c) motion filed subsequent to the entry of the disposi-

tional order, citing *People in Interest of A.L.,* 713 P.2d 934 (Colo.App.1985), in support of his argument. The trial court denied the motion. On appeal, a divided panel of the Court of Appeals affirmed the trial court's ruling, expressly refusing to follow *A.L.*

## II

At the time the order of disposition was entered, the Children's Code expressly authorized a trial court to adopt one or more of several dispositional provisions. Sections 19–3–113(1)(a) & (c), 8 C.R.S. (1978 & 1985 Supp.),[3] contained the following pertinent provisions:

**Delinquent child—disposition—restitution—parental liability.** (1) If a child has been adjudicated as being delinquent, the court shall enter a decree of disposition containing any required provision and one or more of the following provisions which the court finds appropriate:

(a) The court may make any disposition, or combination of dispositions when appropriate, provided under section 19–3–112(1) or (4) or subsection (3) of this section;

. . . .

(c) The court may commit a person eighteen years of age or over to the department of institutions if he is adjudicated delinquent for an act committed prior to his eighteenth birthday or upon revocation of probation.

Relevant portions of section 19–3–112, 8 C.R.S. (1978 & 1985 Supp.),[4] contained the following provisions:

**Child needing oversight—disposition.** (1) When a child has been adjudicated as needing oversight, the court shall enter a decree of disposition containing one or more of the following provisions which the court find appropriate:

---

2. The order contains other provisions not relevant to this proceeding, including numerous terms and conditions of probation. M.C. does not challenge any of the terms or conditions of probation, or the appropriateness of the imposition and conditional suspension of the sentence to the Pueblo Youth Center.

3. This statute was repealed and reenacted in 1987. It is now codified as § 19–2–703, 8B C.R.S. (1988 Supp.).

4. Section 19–3–112 was repealed in 1986. Ch. 144, § 16, § 19–3–112, 1986 Colo.Sess.Laws, 795.

(a) The court may place the child on probation or under protective supervision in the legal custody of one or both parents or the guardian under such conditions as the court may impose.

In addition, section 19–3–117, 8 C.R.S. (1978),[5] contained the following provisions regarding the granting of probation:

**Probation—terms—release—revocation.** (1) The terms and conditions of probation shall be specified by rules or orders of the court. The court, as a condition of probation for a child who is fourteen years of age or older but less than eighteen years of age on the date of the dispositional hearing, has the power to impose a commitment, placement, or detention. The aggregate length of any such commitment, placement, or detention, whether continuous or at designated intervals, shall not exceed forty-five days. Each child placed on probation shall be given a written statement of the terms and conditions of his probation and shall have such terms and conditions fully explained to him.

(2)(a) The court shall review the terms and conditions of probation and the progress of each child placed on probation at least once every six months.

(b) The court may release a child from probation or modify the terms and conditions of his probation at any time, but any child who has complied satisfactorily with the terms and conditions of his probation for a period of two years shall be released from probation, and the jurisdiction of the court shall be terminated.

The structure of the trial court's decree of disposition suggests that it was based in part on section 19–3–117(1). However, that section authorized a "commitment, placement, or detention" for an aggregate length of time not to exceed forty-five days

only for children less than eighteen years of age on the date of the dispositional hearing. M.C. was not such a person on March 27, 1986. The only provisions of section 19–3–117 applicable to M.C. were subsections (2)(a) and (b), requiring the trial court periodically to review the progress of any child placed on probation and requiring the termination of probation at the end of a period of two years.

Section 19–3–113(1)(c) did authorize a trial court "to commit" a person eighteen years of age or over to the Department of Institutions. Section 19–3–112(1)(a) authorized the placement of a child on probation. M.C. challenges only the portions of the decree of disposition which were based on these statutory provisions.[6]

M.C. argues that every child has a constitutionally protected liberty interest. M.C. then asserts that this interest is impermissibly restricted by a statutory scheme permitting one class of persons—those who are eighteen years of age or older when penalties are imposed for offenses committed when they were also eighteen years of age or older—to pay a fine upon conviction of possession of marijuana while permitting another class of persons—those who are eighteen years of age or older when penalties are imposed for commission of the same offense when they were under eighteen years of age—to be sentenced to the Department of Institutions or placed on probation for a period of two years. M.C. suggests that our decisions in *People v. Wilhelm*, 676 P.2d 702 (Colo.1984), and *People v. McKenzie*, 169 Colo. 521, 458 P.2d 232 (1969), wherein we concluded that constitutional guarantees of equal protection of the law are violated when two statutes authorize different punishments for

---

5. This statute was repealed and reenacted in 1987. It is now codified as § 19–2–705, 8B C.R.S. (1988 Supp.).

6. In *People v. District Court*, 673 P.2d 991 (Colo. 1983), we reversed a decree of disposition that denied probation, imposed a sentence to the Department of Corrections and then suspended the sentence and committed the defendant to the supervisory services of the Probation De-

partment. Noting that the terms and conditions imposed by the trial court were authorized only as terms and conditions of probation, we held that the decree exceeded the statutory authority of the court. *Id.* at 995. In this case, the trial court's decision to commit M.C. to the Department of Institutions was expressly authorized by the statute. M.C. does not challenge the trial court's decision to suspend the commitment.

the same criminal conduct, support his argument.

We do not find M.C.'s arguments persuasive. Initially, it must be noted that, unlike the circumstances in *Wilhelm* and *McKenzie*, we are not dealing with two criminal statutes. The elaborate dispositional structure of the Children's Code is designed to further the purposes of that statute, stated in section 19-1-102(1), 8 C.R.S. (1978 & 1985 Supp.),[7] as follows:

**Legislative declaration.** (1) The general assembly declares that the purposes of this title are:

(a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

(b) To preserve and strengthen family ties whenever possible, including improvement of home environment;

(c) To remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered and, in either instance, for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child; and

(d) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society.

In recognition of the benevolent purposes of the act, we have consistently recognized that the proceedings authorized thereunder are civil rather than criminal in nature. *S.G.W. v. People*, 752 P.2d 86, 88 (Colo. 1988); *S.A.S. v. People*, 623 P.2d 58, 60 (Colo.1981); *People in Interest of R.A.D.*, 196 Colo. 430, 433, 586 P.2d 46, 47–48 (1978); *People ex rel. Terrell v. District Court*, 164 Colo. 437, 444, 435 P.2d 763, 766 (1967).

Criminal codes are designed for quite different purposes. It is of course true that many of the procedural protections afforded persons accused of criminal conduct are also available to persons defined as children to ensure fundamental fairness in juvenile proceedings. *See, e.g., In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *J.T. v. O'Rourke*, 651 P.2d 407 (Colo.1982); *People in Interest of C.B.*, 196 Colo. 362, 585 P.2d 281 (1978). However, that fact may not serve to obscure the fundamental differences between the two types of legislation.

■ In recognition of these differences, some courts have suggested that persons subject to statutory schemes similar to the Children's Code do not constitute a class similarly situated to adults subject to statutory provisions imposing sanctions for criminal conduct. *See In re Eric J.*, 25 Cal.3d 522, 601 P.2d 549, 159 Cal.Rptr. 317 (1979). The Court of Appeals adopted this perspective in concluding that the class to which M.C. belonged was not substantially similar to the class composed of adults subject to the Criminal Code. However, for purposes of determining whether provisions of the Children's Code authorizing commitment to the Department of Institutions and the imposition of a lengthy period of probation violate equal protection guarantees, we are persuaded that the fact that some eighteen year old persons are defined as children and, consequently, are granted special treatment does not render that class dissimilar to the class of other eighteen year olds not so defined. In examining the sanctions adopted by the General Assembly for the same criminal conduct, the relevant classes are: (1) persons eighteen years of age or older at the time a penalty is imposed for an offense committed prior to their eighteenth birthdays and (2) persons eighteen years of age or older at the time the penalty is imposed for the same offense who were also eighteen years of age or older when they committed the offense.[8]

---

7. This statute was repealed and reenacted in 1987. It is now codified as § 19-1-102, 8B C.R.S. (1988 Supp.).

8. Persons committing an offense just prior to their eighteenth birthday might not receive a dispositional order until they are nineteen, and commitments to custody might be imposed as

Of course, the primary legislative focus is on persons who commit the offense. We conclude that, contrary to the decision of the Court of Appeals, the class to which M.C. belongs is similarly situated to the class of adults subject to the sanctions contained in the Criminal Code.

## III

We must next determine the standard by which the dispositional alternatives adopted by the General Assembly are to be measured. If M.C.'s protected liberty interest is not deemed fundamental in nature, the legislation challenged as impermissibly restricting that interest is measured by the rational relationship test: whether the statute serves a valid governmental purpose and whether the challenged provisions are reasonably related to that purpose. *Austin v. Litvak*, 682 P.2d 41, 49 (Colo.1984); *People v. Chavez*, 629 P.2d 1040, 1051 (Colo.1981). Some courts have concluded that the liberty interests of children, while significant, are not fundamental in nature and that legislation restricting such interests is to be measured by the rational relationship test. *See In re Eric J.*, 25 Cal.3d 522, 601 P.2d 549, 159 Cal. Rptr. 317 (1979); *Smith v. State*, 444 S.W.2d 941 (Tex.Civ.App.1969).

When a fundamental liberty interest is involved, however, legislative classifications are to be examined by a heightened standard, often denominated the strict scrutiny test. *Austin v. Litvak*, 682 P.2d at 49. In these circumstances, the state must demonstrate that the legislation serves a compelling state interest and that the challenged statutory provisions are necessary to further that interest. Some courts have determined that the liberty interest of a child is a fundamental interest requiring application of strict scrutiny standards to legislation restricting that interest. *See, e.g., Matter of C.H.*, 210 Mont. 184, 683 P.2d 931 (1984); *State v. Rice*, 98 Wash.2d 384, 655 P.2d 1145 (1982).

This court has recognized that commitment implicates a "protectible liberty interest" of children. *S.G.W. v. People*, 752

sanctions for probation violations on nineteen

P.2d 86, 88 (Colo.1988); *P.F. v. Walsh*, 648 P.2d 1067, 1070 (Colo.1982). However, this court has not described that interest as fundamental in nature. *See Villareal v. Lopez*, 44 Colo.App. 555, 619 P.2d 86 (1980). To the contrary, in *People in Interest of J.M.*, 768 P.2d 219 (Colo.1989), we concluded that a child's liberty interest in being free to travel was not a fundamental right requiring application of strict scrutiny analysis to a municipal ordinance restricting the ability of persons under eighteen years of age to remain on the public streets of the city.

In several other cases addressing equal protection challenges to various provisions of the Children's Code, we have also applied a rational relationship test to measure the contested sections. *See People in Interest of T.M.*, 742 P.2d 905 (Colo.1987); *People in Interest of D.G.*, 733 P.2d 1199 (Colo.1987); *People v. Thorpe*, 641 P.2d 935 (Colo.1982); *Myers v. District Court*, 184 Colo. 81, 518 P.2d 836 (1974). It is also noteworthy that the liberty interest asserted by M.C. is that of a person adjudicated a delinquent child under the Children's Code—an interest that is neither as broad nor as compelling as the liberty interest of a person not so adjudicated. *See People v. White*, 656 P.2d 690 (Colo.1983).

In consideration of these principles and our prior decisions, we conclude that the interest of M.C. here involved, while significant, is not so fundamental in nature as to require application of the strict scrutiny standard. In so concluding, we reject the Court of Appeals contrary suggestion that the nature of M.C.'s liberty interest is so fundamental in nature as to warrant strict scrutiny analysis of the dispositional provisions relied upon by the trial court. Accordingly, we measure the challenged statutory provisions by the rational relationship test.

It is undisputed that the state has a significant interest and legitimate role in supervising and regulating the conduct of children for their protection. *People in Interest of J.M.*, 768 P.2d at 222; *People in*

year olds.

*Interest of T.M.,* 742 P.2d at 907; *S.A.S. v. District Court,* 623 P.2d 58, 60 (Colo.1981). That role serves as the motivating force as well as the legal justification for all of the provisions of the Children's Code. The conclusion that some children might benefit from probation for a lengthy period of time is based on experience as well as theory. The provisions authorizing relatively lengthy terms of probationary status, with mandatory periodic judicial review, are calculated to assist children to adjust to the requirements of adult participation in the community. We find these provisions reasonably related to the purposes of the Children's Code.

We also conclude that the provision authorizing commitment to the Department of Institutions for a period of two years is reasonably related to the legislative purposes underlying the Children's Code. Among those purposes are to remove a child from the custody of the child's parents when the public would otherwise be endangered and to secure the necessary care, guidance and discipline for a child removed from parental custody. § 19–1–102(1)(c) & (d), 8 C.R.S. (1978 & 1985 Supp.).[9] While confinement in the custody of the Department of Institutions might well be deemed a harsh dispositional alternative, the legislative scheme authorizing such confinement cannot be deemed unrelated in reason to the beneficial, disciplinary and protective purposes of the statutory scheme.

M.C. argues that a contrary result is required in view of the decision in *People in Interest of A.L.,* 713 P.2d 934 (Colo.App. 1985). In *A.L.,* the court vacated a trial court's dispositional order imposing a six month county jail sentence on a child who was eighteen years of age at the time of the dispositional hearing and who had committed the same offense M.C. committed. The defendant contended that the trial court erred in imposing the jail sentence, and the People conceded that the disposition was improper. The court, relying on *People v. Wilhelm,* 676 P.2d 702 (Colo. 1984), and *P.F. v. Walsh,* 648 P.2d 1067

(Colo.1982), stated that it concurred with the People's position.

In the present case, the majority of the panel declined to follow *A.L.* The dissenting judge considered *A.L.* to be persuasive and controlling. It is not clear from the opinion in *A.L.* precisely what grounds the defendant relied upon for the argument that the trial court's dispositional order was improper. Because the dispositional provision adopted by the trial court in *A.L.* differs significantly from that chosen by the trial court here, we do not view *A.L.* to be applicable to the circumstances of this case.

### IV

For the foregoing reasons, we affirm the conclusion reached by the Court of Appeals that the provisions of the Children's Code authorizing commitment to the Department of Institutions for a period not to exceed two years and authorizing a grant of probation for a similar period of time do not violate M.C.'s rights to equal protection of the law under the Colorado Constitution or the United States Constitution. As indicated by our opinion, however, we do so on grounds that differ from those underlying the Court of Appeals decision.

The judgment is affirmed.

ERICKSON, J., specially concurs. QUINN C.J., and VOLLACK, J., join in the concurrence.

MULLARKEY, J., dissents.

ERICKSON, Justice, specially concurring in the result:

When the petition in delinquency was filed M.C. was a seventeen-year old juvenile. M.C. was initially charged with the felony offense of second-degree burglary and subsequently was charged with the second-class petty offense of possession of not more than one ounce of marijuana. Pursuant to a plea agreement, M.C. pleaded guilty to the misdemeanor marijuana charge and the felony charge was dismissed. The plea agreement was entered

---

**9.** See n. 7.

into and the dispositional hearing was held after M.C. attained the age of eighteen years.

The Children's Code was intended to afford juveniles with protections not afforded adults under the Criminal Code and in nearly all instances lesser sanctions are imposed than those under the Criminal Code. When M.C. allegedly committed the offenses charged he was a juvenile subject to prosecution under the Children's Code. It is for this reason petitioner's equal protection claim fails. It is hornbook law that in order to state an equal protection claim, it must be shown that a law treats similarly situated groups unequally. *See People v. Mozee,* 723 P.2d 117 (Colo.1986); *People v. Childs,* 199 Colo. 436, 610 P.2d 101 (Colo. 1980). In this case, there are no similarly situated groups.

Juveniles prosecuted under the Children's Code are not similarly situated with adults prosecuted under the Criminal Code. As the court said in *In re Eric J.,* 25 Cal.3d 522, 601 P.2d 549, 159 Cal.Rptr. 317 (1979), when denying appellant's equal protection claim:

> [A]ppellant has not been denied equal protection of the laws. The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner. Adults convicted in the criminal courts and sentenced to prison and youths adjudged wards of the juvenile courts and committed to the Youth Authority are not "similarly situated."

*Id.* at 527, 601 P.2d at 553, 159 Cal.Rptr. at 320–21 (citation and footnote omitted).

Juvenile sentencing is tailored to rehabilitate and treat, not punish, the juvenile. Even though criminal charges and sanctions are addressed in a delinquency petition under the Children's Code, a delinquency proceeding is essentially a civil action that is materially different from criminal prosecution. In my view, the equal protection claim is without merit, and *People in the Interest of A.L.,* 713 P.2d 934 (Colo. App.1985), was wrongly decided.

I also note that because the proceedings against M.C. were initiated and conducted under the Children's Code, the disposition of M.C. must also be conducted under the Children's Code. Pursuant to section 19–1–104(4)(a), 8B C.R.S. (1986), a juvenile court has discretion to determine whether the juvenile should be held for felony criminal charges under the Criminal Code in the district court. Before the juvenile court exercises its discretion and transfers its jurisdiction over the juvenile to the district court, it must hold a transfer hearing in accordance with section 19–3–108. If the juvenile is transferred to the district court, he is no longer subject to the remedies contained in the Children's Code. Instead, he becomes subject to the provisions contained in the Criminal Code.

As the logical corollary to this system, when the juvenile court does not transfer jurisdiction to the district court, it retains sole jurisdiction of the juvenile. Consequently, the juvenile court can apply only those remedies available to it, namely those contained in the Children's Code. It has no authority to impose a sentence contained in the Criminal Code. Applying this law to the facts before us, I would hold that the juvenile court was limited to applying the remedy found in sections 19–3–112(1)(a) and 19–3–113(1)(c) of the Children's Code. It had no authority to impose a sentence pursuant to section 18–18–106(1) of the Criminal Code. Accordingly, I would affirm the court of appeals.

I am authorized to say that Chief Justice QUINN and Justice VOLLACK join in this special concurrence.

MULLARKEY, Justice, dissenting:

I respectfully dissent.

This case can be put in better perspective if we recognize that the legislature has created three classes of offenders for purposes of this case. The first group is adults. An adult who possesses not more than one ounce of marihuana commits a class 2 petty offense which is punishable by no more than a $100 fine. § 18–18–106(1), 8B C.R.S. (1986). An adult offender cannot be placed on probation or

receive any more serious penalty. § 16–11–201(1), 8A C.R.S. (1986).

Juveniles are divided into two classes depending on the child's age at the time when a final disposition is reached in each case. Some but not all of the possible dispositions are quoted in the majority opinion at pp. 859–860. The Children's Code generally defines a juvenile or "child" as "a person under eighteen years of age." § 19–1–103(3), 8B C.R.S. (1986). The juvenile court, however, retains jurisdiction over an individual who was under the age of 18 when the offense was committed but who is 18 years of age or older when a disposition is reached in his case. Such persons are excluded from the definition of an "adult" in section 19–1–103(2), 8B C.R.S. (1986). M.C. falls into this third category which I will refer to as "18 year olds."

This case comes before us because our statutes provide dispositional alternatives for 18 year olds which differ from those applicable to either adults or other juveniles. In the case of possession of less than one ounce of marihuana, 18 year olds are subjected to significantly harsher penalties than either other group because they alone may be sentenced to county jail for up to 180 days. § 19–3–113(1)(d), 8 C.R.S. (1976).[1] An 18 year old also may be placed on probation and, if his probation is revoked, he may be committed to the department of institutions, § 19–3–113(1)(c), 8B C.R.S. (1986), or sentenced to county jail for up to 180 days. § 19–3–117(3)(e), 8B C.R.S. (1986). M.C. was placed on probation for two years and thus faces county jail time if his probation were revoked.

Numerous cases have upheld the constitutionality of juvenile or young offender systems which provide substantially different or longer periods of confinement for juveniles or young offenders. *See, e.g., United States v. Lowery,* 726 F.2d 474 (9th Cir.1983) (no equal protection violation when defendant received longer sentence under Youth Corrections Act than defendant could have received as adult), *cert.*

*denied,* 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 73 (1984). The rationale of these cases is based on the state's special responsibilities for juveniles and the rehabilitative nature of the programs available to juveniles while they are confined. *See generally* S. Davis, Rights of Juveniles: The Juvenile Justice System § 1.2 (2d ed. 1988) (philosophical underpinnings of juvenile law include idea that children capable of rehabilitation through *parens patriae* power of the state).

*In the Matter of L.M.,* 432 A.2d 692 (D.C.App.1981), for example, involved a factual situation very similar to the case now before us. L.M. was tried and convicted as a juvenile of smoking on a city bus. An adult who committed this act faced no more than a $50 fine whereas L.M. was placed on probation for one year. The District of Columbia Court of Appeals rejected L.M.'s equal protection claim and held, using a rational basis analysis, that the different treatment of juveniles was justified by "the strong governmental interest in determining the treatment required to rehabilitate youthful offenders, and in 'avoid[ing]' treatment of juveniles as adult criminal defendants to the extent practicable.'" 432 A.2d at 694 (citations omitted) (quoting *District of Columbia v. P.L.M.,* 325 A.2d 600, 604 (D.C.App.1974)).

Courts have been careful to ensure the existence of a rehabilitative purpose before upholding a statutory scheme which provides harsher treatment for juvenile offenders. *E.g., United States v. Ballesteros,* 691 F.2d 869 (9th Cir.1982) (no equal protection violation when youth offender received longer sentence than adult offender would receive, provided that longer sentence serves a rehabilitative purpose), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). *See also State v. Rice,* 98 Wash.2d 384, 655 P.2d 1145, 1158 (1982) ("[T]here is no rational reason for sentencing juvenile offenders to longer terms of incarceration than could be imposed on adults convicted of the same offense, unless the basic theory … is rehabilitative.").

---

1. Current law permits sentencing 18 year olds to community corrections as well as to county jail for the same period. § 19–3–113(1)(d), 8B C.R.S. (1986).

In my view, this statutory scheme breaks down when it authorizes 18 year olds who have been adjudicated as juvenile offenders to be incarcerated in county jail. Jail time is not a disposition which may be applied to other juveniles. *People v. A.F.*, 192 Colo. 207, 557 P.2d 418 (1976). Ordering a child sentenced to jail is inconsistent with the strong public policy expressed in other parts of the Children's Code that children should not be incarcerated with adults. *See, e.g.*, § 19–2–103, 8B C.R.S. (1986) (concerning detention and shelter of children). As one court noted, confinement of juveniles to adult jails "may well contribute to crime rather than reduce it." *M.L.N. v. Greiner*, 360 S.E.2d 554, 559 (W.Va.1987) (quoting *R.C.F. v. Wilt*, 162 W.Va. 424, 252 S.E.2d 168, 171 (1979)). No one here has argued that jail serves any rehabilitative purpose for the 18 year old. Indeed, the People concede that jail time is "purely punitive."

Two state courts which have examined the issue of the propriety of sentencing juvenile offenders to adult jails have found such statutory schemes impermissible. In *M.L.N. v. Greiner*, 360 S.E.2d 554 (W.Va. 1987), the West Virginia Supreme Court considered a statutory scheme which provided that youth offenders who remain under the continuing jurisdiction of the juvenile court after turning age 18 could be incarcerated in county jails with adult prisoners. Applying a due process analysis, the court held that incarcerating juvenile offenders in an adult jail is not rationally related to the rehabilitative purpose of the juvenile system. *M.L.N.*, 360 S.E.2d at 559. *See also State v. Grady*, 3 Ohio App.3d 174, 444 N.E.2d 51 (1981) (incarcerating youth offender in jail or other adult facility is contrary to rehabilitative goal of juvenile system). In *Grady* the court concluded that it was impermissible to sentence an 18 year old who had committed an offense as a juvenile to an adult jail unless the court found that housing was unavailable in an appropriate juvenile facility or that the public safety so required. *Grady*, 444 N.E.2d at 54.

I agree with *Grady* that there may be special circumstances justifying the transfer of a juvenile offender to an adult correctional facility. That, however, would require a particularized determination of need, a requirement which is not present in the statute now before us. *Compare* § 19–3–113.2(2)(c), 8B C.R.S. (1986) (allowing aggravated juvenile offenders who are over 18 years of age to be transferred to the custody of the Department of Corrections "only upon a finding by a preponderance of the evidence that the child is no longer benefiting from the programs of the department of institutions.").

Because there is no rehabilitative purpose for sentencing an 18 year old to jail, the rationale supporting different treatment of juveniles and adults is not present. There is no rational basis for incarcerating 18 year olds in an adult jail when an adult does not face incarceration for the same offense. In my view, *People in Interest of A.L.*, 713 P.2d 934 (Colo.Ct.App.1985), was correctly decided. I would hold that an 18 year old juvenile offender cannot be sentenced to jail either directly or as a result of a probation revocation when the 18 year old is found to have possessed less than one ounce of marihuana.