# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

State of West Virginia ex rel.
Pamela Jean Games-Neely,
Prosecuting Attorney,
Petitioner,

vs) No. 16-0505 (Berkeley County, Case No. 13-JD-92)

The Honorable John C. Yoder, Judge of
the Circuit Court of Berkeley County;
and J.W.,
Respondents,

and

State of West Virginia ex rel.
Pamela Jean Games-Neely,
Prosecuting Attorney,
Petitioner,

vs) No. 16-0506 (Berkeley County, Case Nos. 14-JD-119, 14-JD-142 )

The Honorable John C. Yoder, Judge of
the Circuit Court of Berkeley County;
and M.F.,
Respondents.

**FILED**

**November 10, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Pamela Games-Neely, the prosecuting attorney of Berkeley County ("the State"), seeks two writs of prohibition to be directed against the Circuit Court of Berkeley County in two cases involving juvenile drug court. In these matters, two juveniles entered drug court after their cases had been adjudicated—both juveniles had entered into plea agreements with the State and made certain admissions to the allegations contained in their respective juvenile petitions. The two referrals to drug court were made as conditions of the juveniles' probation. After completing drug court, the circuit court withdrew the juveniles' admissions, vacated their pleas, and dismissed the two juvenile petitions.

1

The State, by counsel Cheryl K. Saville, requests that this Court reinstate the juveniles' adjudications, and direct the circuit court to close the juveniles' cases by final order. The two juveniles, M.F., by counsel Jason M. Stedman, and J.W., by counsel J. Daniel Kirkland, assert that the circuit court did not err in dismissing the juveniles' petitions and ask this Court to deny the requested writs. After review, we grant the requested writs. These cases satisfy the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for disposition by memorandum decision.

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

These writs concern two separate matters in which the juveniles, J.W. and M.F., were ordered to take part in the juvenile drug court program as conditions of their probation after their cases had been adjudicated.[1] Before reviewing the facts underlying each of the juvenile petitions, we commend J.W. and M.F. for successfully completing juvenile drug court and wish them continued success.

## A. In re: J.W.

On April 5, 2013, J.W. was charged by juvenile petition with five counts: 1) grand larceny, 2) possession of stolen property, 3) joyriding, 4) driving without an operator's license, and 5) obstructing an officer. On August 27, 2013, J.W. and the State entered into a plea agreement in which J.W. admitted to joyriding, driving without an operator's license, and obstructing an officer. The State agreed to dismiss the remaining charges in the petition, grand larceny and possession of stolen property. The agreement also provided that J.W. pay $50.00 in restitution. The Circuit Court of Berkeley County, sitting as a juvenile court, accepted the plea agreement and adjudged J.W. to be a delinquent youth. The circuit court placed J.W. on supervised probation for nine months and ordered him to pay $50.00 in restitution.

On September 23, 2013, Probation Officer William Brooks filed a petition to revoke J.W.'s probation because he 1) had positive drug screens, 2) missed appointments with his probation officer, 3) had unexcused absences from school, 4) had a 0.0 grade point average, 5) failed to obey his parents' household rules, and 6) failed to participate with the juvenile day reporting center. The circuit court subsequently revoked J.W.'s probation and remanded him to the custody of the Department of Health and Human Resources to complete a program of residential treatment at the Timber Ridge School. After successfully completing the program at Timber Ridge, J.W. was placed on aftercare probation for a period of six months.

---

[1] We adhere to our usual practice in cases involving sensitive facts and do not refer to the parties using their full names. *See In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005).

Approximately three months into J.W.'s aftercare probation period, Probation Officer Brooks filed another petition to revoke J.W.'s probation because he 1) had positive drug screens, 2) exhibited behavior problems at school, and 3) had unexcused absences from school. As a result of this petition, the circuit court extended J.W.'s aftercare probation to a period of one year, and ordered J.W. to complete the juvenile drug court program as a term and condition of his probation. The order requiring J.W. to participate in drug court did not state that his juvenile petition would be dismissed upon successful completion of the program.

J.W. successfully completed the drug court program. Thereafter, the juvenile drug court judge entered an order returning J.W.'s case to the circuit court for entry of an order dismissing J.W.'s juvenile petition. The discharge form order the juvenile drug court sent to the circuit court states, "it is hereby ORDERED that the juvenile shall be released from juvenile drug court and the previously accepted admission and plea entered by the juvenile is withdrawn."

The State objected to the portion of the order vacating J.W.'s plea, withdrawing his admissions, and dismissing his juvenile petition.[2] After holding a hearing, the circuit court found that J.W. had successfully completed the juvenile drug court program. Because J.W. completed drug court, the circuit court vacated his plea, withdrew his admissions, and dismissed the juvenile petition filed against him. The circuit court's order provides:

> [W]hen the parties in a juvenile proceeding refer an offender to the Juvenile Drug Court program it is implicit in that agreement that upon successful completion of Juvenile Drug Court all previously accepted admissions and pleas entered shall be withdrawn. Here, the agreement between the parties was silent as to the dismissal of related charges. Without an agreement between the parties affirmatively denying [J.W.] the dismissal of related charges, the Court finds that dismissal of the related charges is solely within the Court's discretion.

Following entry of this order, the State filed a petition for a writ of prohibition with this Court.

---

[2] The State did not object to J.W.'s graduation from the drug court program, to the circuit court discharging J.W. from probation before the expiration of the ordered term (one year), or from the court entering a final order in the matter.

3

## B. In re: M.F.

On August 14, 2014, M.F. was charged by juvenile petition with three counts: 1) grand larceny, 2) breaking and entering, and 3) conspiracy to commit breaking and entering. M.F. and the State entered into a plea agreement in which M.F. admitted to grand larceny, agreed to testify against a co-defendant, and agreed to a "restitution hearing." The State agreed to dismiss the remaining two charges in the juvenile petition, breaking and entering, and conspiracy to commit breaking and entering. On September 24, 2014, the Circuit Court of Berkeley County, sitting as a juvenile court, accepted the plea agreement and adjudged M.F. to be a delinquent youth. The circuit court placed M.F. on supervised probation for one year and, following a separate restitution hearing, ordered M.F. to pay $4,000.00 to the victims of her crimes.[3]

On October 14, 2014, M.F. was charged by juvenile petition with one count of possession of marijuana, and one count of fleeing an officer on foot arising from an incident that occurred before she was adjudicated for grand larceny. M.F. admitted to the possession of marijuana count and was placed on probation to run concurrently with the prior probation order.

On May 13, 2015, Probation Officer Sahana Mills filed a petition to revoke M.F.'s probation because she 1) had positive drug screens, 2) missed appointments with her probation officer, and 3) had unexcused absences from school. The petition also alleged that M.F. had not made any restitution payments. Based on this petition, M.F.'s probation was revoked. Thereafter, the parties agreed to re-admit M.F. to probation with the condition that she participate in juvenile drug court. The circuit court then entered a disposition order placing M.F. on probation and ordering that she participate in drug court as a term and condition of her probation.

M.F. successfully completed the drug court program. Thereafter, the juvenile drug court judge entered an order returning M.F.'s case to the circuit court for entry of an order dismissing M.F.'s juvenile petition. The discharge form order states, "it is hereby ORDERED that the juvenile shall be released from juvenile drug court and the previously accepted admission and plea entered by the juvenile is withdrawn."

The State objected to the portion of the order vacating M.F.'s plea, withdrawing her admissions, and dismissing her juvenile petition.[4] After holding a hearing, the circuit court found that M.F. had successfully completed the juvenile drug

---

[3] The court ordered that M.F.'s father would be jointly and severally liable for making full restitution to the victims.

[4] The State did not object to M.F.'s graduation from the drug court program, to the circuit court discharging M.F. from probation before the expiration of her ordered term, or from the court entering a final order in the matter.

court program. Because M.F. completed drug court, the circuit court vacated her plea, withdrew her admissions, and dismissed the juvenile petition filed against her. Following entry of this order, the State filed a petition for a writ of prohibition with this Court.

## II.
## STANDARD OF REVIEW

This Court has previously addressed our standard of review for a writ of prohibition. "The writ of prohibition will issue only in clear cases, where the inferior tribunal is proceeding without, or in excess of, jurisdiction." Syllabus, *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925). *See also* Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."); Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va. Code 53-1-1.").

In Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we set forth the following standard for issuance of a writ of prohibition when it is alleged a lower court is exceeding its authority:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

5

With the foregoing in mind, we turn to the parties' arguments.

## III.
## ANALYSIS

The State asserts that it satisfies all five *Hoover* factors for the granting of its requested writs of prohibition. The State's chief argument is that this Court should grant the present writs pursuant to the third *Hoover* factor because the circuit court exceeded its legitimate authority by withdrawing the two juveniles' admissions, vacating their pleas, and dismissing their petitions after they completed drug court.[5]

This Court has recognized that the purpose of our juvenile law is to promote the rehabilitation of troubled children, rather than to punish them. *State v. McDonald,* 173 W.Va. 263, 267, 314 S.E.2d 854, 858 (1984). To this end, juvenile drug court was designed to meet the rehabilitative needs of juveniles. West Virginia Code 49-4-703 [2015] provides:

> Juvenile drug courts shall be designed and operated consistent with the developmental and rehabilitative needs of juveniles as defined in this article. The Supreme Court shall provide uniform referral, procedure and order forms that shall be used in juvenile drug courts. The Supreme Court is further authorized to appoint appropriate hearing officers in those jurisdictions which choose to operate a juvenile drug court. Hearing officers for juvenile drug courts shall be limited to current or senior status circuit court judges or family court judges.

Consistent with the goal of meeting the rehabilitative needs of juveniles, the West Virginia Supreme Court of Appeals Division of Probation Services promulgated the "Juvenile Drug Court Protocol" ("drug court protocol"). The drug court protocol contains a detailed description of the five entry levels in which a juvenile may enter the drug court program. Each entry level sets forth the specific action or actions a court may take after a juvenile completes the drug court program. The drug court protocol provides as follows:

---

[5] The State argues that it has no right to appeal in this case, thus satisfying the first two *Hoover* factors. The State asserts that it satisfies the fourth *Hoover* factor because the alleged error "has been repeated and will likely persist if not addressed by this Court." Finally, the State asserts that it satisfies the fifth *Hoover* factor because the juvenile drug court program is "relatively new to many parts of the State, and the State is not aware of any precedent existing in this Court concerning these issues."

6

**ENTRY LEVELS INTO THE JUVENILE DRUG COURT:**

1. **Pre-petition Diversion**. The juvenile drug court probation officer (JDCPO) receives a referral or complaint without a juvenile petition. Participation is voluntary by the youth and parent/guardian following a dual assessment and determination of eligibility for admission to the Juvenile Drug Court. If the youth refuses the Juvenile Drug Court or is terminated from the program, a petition can be initiated. **If the youth successfully completes the program, the complaint can be destroyed.**

2. **Signed, but non-filed petition**. The JDCPO receives a signed petition that has not been formally filed and is being held in abeyance pending the youth's participation in the Juvenile Drug Court. Participation is voluntary by the youth and parent/guardian following a dual assessment and determination of eligibility for admission to the Juvenile Drug Court. **Because the petition was never formally filed, the petition can be destroyed when the youth successfully completes the program.** If the youth refuses the program or is terminated from the program, the petition can be formally filed and proceed through the court system.

3. **Filed petition (Pre-Adjudication)**. A petition is filed, but it has not proceeded through the court system and/or the judge makes a referral prior to adjudication. Participation is voluntary by the youth and parent/guardian. **At completion of JDC, the petition may be dismissed.** If the youth refuses the program or is terminated, the youth would return to the Court for adjudication.

4. **Filed petition (Post-Adjudication)**. The judge can make referral to JDC following adjudication, but prior to a disposition. Participation may be voluntary or non-voluntary by the youth and parent/guardian. **At completion of JDC, the petition may be dismissed.** If the youth refuses the program or is terminated, the youth would return to Court for disposition.

5. **Disposition**. After adjudication, the Circuit Court Judge may order the youth to participate in the JDC as a part of

formal disposition, typically as a condition of probation. Participation is non-voluntary by youth and parent/guardian. **When the youth completes the program, the judge would discharge the youth from the JDC program and may or may not discharge the youth from regular probation.** If the judge chooses to continue regular probation, aftercare services by the JDCPO could be ordered for a period of up to six months. If the youth fails to complete the JDC program, the youth would return to Circuit Court for modification of the earlier disposition order. In addition, this entry level would include post-dispositional referrals from a probation officer.

(Emphasis added).

J.W. and M.F. were ordered to participate in juvenile drug court after their cases had been adjudicated, and after they had violated the terms and conditions of their probation. Thus, J.W. and M.F. entered drug court at entry level five, disposition. Entry level five has two key distinctions that set it apart from the other four entry levels. First, entry level five is the only entry level in which participation by the juvenile in the drug court program is always on a non-voluntary basis.[6] Second, entry level five does not permit a circuit court to dismiss the juvenile's case upon the juvenile's successful completion of drug court. In entry level one, the complaint against a juvenile may be destroyed upon successful completion of drug court. Similarly, entry level two provides for the juvenile petition to be destroyed upon the juvenile's successful completion of drug court. Entry levels three and four establish that "[a]t completion of JDC [juvenile drug court], the petition may be dismissed." Unlike the other four entry levels, level five does not permit a court to destroy the juvenile complaint or dismiss the juvenile petition upon successful completion of drug court. Instead, level five provides that a court "would discharge the youth from the JDC program and may or may not discharge the youth from regular probation" after completing drug court.[7]

---

[6] Participation in entry levels one, two, and three is voluntary. Participation in entry level four may be voluntary or non-voluntary.

[7] Entry level five corresponds with a court ordering a juvenile to participate in the drug court program pursuant to a formal disposition under W.Va. Code 49-4-714(b)(3) [2015], which states that following the disposition of a juvenile proceeding, the court may:

> (3) Upon a finding that the juvenile is in need of extra-parental supervision: (A) Place the juvenile under the supervision of a probation officer of the court . . . ; and (B)

8

In the instant matters, J.W. and M.F. entered juvenile drug court at entry level five. Both of their adjudications were complete and both were ordered to participate in juvenile drug court after they had violated the terms of their probation. Because J.W. and M.F. entered the juvenile drug court program pursuant to entry level five, the State argues that the circuit court exceeded its legitimate authority by dismissing J.W. and M.F.'s juvenile petitions after they completed drug court. The State asserts that under the plain language of the drug court protocol, the circuit court only had the authority to discharge J.W. and M.F. from "regular probation."

By contrast, counsel for J.W. and M.F. argue that a form order promulgated by this Court for entry after a juvenile has completed drug court provides, "In acknowledgement of this success, it is hereby ORDERED that the juvenile shall be released from juvenile drug court and the previously accepted admission and plea entered by the juvenile is withdrawn." Counsel for J.W. asserts that entry of this form order is "the standard practice used throughout the State" to discharge a juvenile from drug court, regardless of the entry level from which the juvenile enters drug court. Counsel also states that "[t]his Court has not promulgated a variance of [this form] ordering that differing [entry] levels prohibit a juvenile's previously accepted admissions and plea entered by the juvenile [from being] withdrawn." Because the Court has not promulgated a different form order for each entry level, counsel for J.W. and M.F. argue that the circuit court did not exceed its legitimate authority by entering the form order that dismissed the juveniles' petitions after they completed drug court.

---

*prescribe a program of treatment or therapy* or limit the juvenile's activities under terms which are reasonable and within the child's ability to perform[.]

(Emphasis added). W.Va. Code 49-4-714(b)(3) does *not* provide that following the disposition of a juvenile proceeding, the court may dismiss a juvenile's petition after the juvenile completes the "program of treatment or therapy." Further, in the modification of a juvenile dispositional order that includes probation, as in the instant matters, a court must consider the best interests of the child in either terminating probation early upon the probation officer's recommendation, or in imposing a more restrictive alternative where a juvenile has not complied with his/her probation. *See* W.Va. Code § 49-4-718 [2015]. The dismissal of a juvenile petition following disposition is not provided for under the juvenile statutes. *See also* Rule 39(e) of The West Virginia Rules of Juvenile Procedure ("A dispositional order may be modified by the court in conformance with West Virginia Code § 49-4-718.").

9

After careful consideration, this Court cannot conclude that entry level five of the drug court protocol means less than what it plainly states. Entry level five does not permit a circuit court to dismiss a juvenile petition upon a juvenile's successful completion of drug court. Instead, entry level five only provides that a court "may or may not discharge the youth from regular probation" after completing drug court.[8] We recognize that some confusion may have resulted from the drug court protocol not including separate form orders that correspond with each entry level.[9] However, the lack of specific form orders for each entry level does not permit a circuit court to ignore the plain language of entry level five and dismiss the juvenile petition of a juvenile who enters the drug court program at level five. The relief available to a juvenile ordered to participate in drug court pursuant to entry level five is clearly set forth in the protocol and is not subject to change based on the language contained in one general form order of discharge. Finding otherwise could lead to an inequitable result. For example: two juveniles, A and B, are adjudicated as juvenile delinquents and placed on probation. Juvenile A violates the terms of his probation and is ordered to attend juvenile drug court. After successfully completing juvenile drug court, Juvenile A's juvenile petition is dismissed in its entirety. By contrast, Juvenile B complies with the terms of his probation and is not ordered to participate in drug court. Despite complying with his probation terms and conditions, Juvenile B is not afforded the same benefit as Juvenile A—the dismissal of his juvenile petition. Under this scenario, Juvenile B has no mechanism to have his petition dismissed by virtue of his compliance with the terms and conditions of his probation.

Because the circuit court granted relief to J.W. and M.F. that is not permitted under the plain language of entry level five of the drug court protocol, we find that the circuit court exceeded its legitimate authority. Based on the foregoing, we conclude that the State is entitled to the requested writs of prohibition pursuant to the third *Hoover* factor because the circuit court exceeded its legitimate authority by withdrawing the two juveniles' admissions, vacating their pleas, and dismissing their petitions. We therefore grant the requested writs and hereby reinstate J.W. and M.F.'s

_____

[8] We reject counsel for J.W.'s argument that because the order requiring J.W. to participate in juvenile drug court was silent as to whether his petition would be dismissed upon his successful completion of drug court, this silence should be construed in his favor. The drug court protocol clearly sets forth the relief available to a juvenile who enters drug court at entry level five. This clear statement— that a court "may or may not discharge the youth from regular probation" after completing drug court—was sufficient to place J.W. on notice that there was no implicit agreement that his completion of drug court would result in dismissal of his juvenile petition.

[9] This Court will administratively address and clarify the form orders that a court should enter upon a juvenile's completion of juvenile drug court.

adjudications.  We remand both matters to the circuit court for entry of final orders closing the juveniles' cases.

Writs Granted.

ISSUED: November 10, 2016

CONCURRED IN BY:
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II